329 So.2d 658

Donald **MITCHELL**

v.

**STATE.**

**6 Div. 53.**

Court of Criminal Appeals of Alabama.

Feb. 17, 1976.

Rehearing Denied March 16, 1976.

William J. Baxley, Atty. Gen., and Randolph P. Reaves, Asst. Atty. Gen., for the State.

J. Mark White, Birmingham, for appellant.

HARRIS, Judge.

Mitchell was convicted of robbery, and the jury fixed his punishment at fifteen years in the penitentiary. He was represented at arraignment and trial by court-appointed counsel. He pleaded not guilty. At the time sentence was imposed, he gave notice of appeal. He was furnished a free transcript and trial counsel was appointed to represent him on appeal.

Omitting the formal parts the indictment reads as follows:

"The grand jury of said county charge that, before the finding of this indictment, DONALD MITCHELL, whose name is to the Grand Jury otherwise unknown, feloniously took FIVE THOUSAND DOLLARS of the lawful currency of the United States of America, a more particular description and denomination of which is otherwise unknown to the Grand Jury, and one four door Chevrolet automobile of the value of FIVE THOUSAND DOLLARS, the personal property of Helen Marie Baker, from her person and against her will, by violence to her person or by putting her in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama."

On December 11, 1974, Ireland's Restaurant located in the Brookwood Shopping Center in Homewood, Jefferson County, Alabama, was robbed by two black men, one of them carrying a pistol.

Miss Helen Marie Baker testified that she was Assistant Manager of the restaurant and that it was her job to open the restaurant every morning; that on the morning of the robbery she drove her car to the restaurant arriving at 6:40 A. M. She cut on all the lights and made a pot of coffee as breakfast was served at 7:00 A. M. The cook was with her when she opened the restaurant and went directly to the kitchen area. At approximately 6:50, a waitress named Cindy Johnson arrived. Miss Baker checked the dining room to see if it was presentable for customers and then went to the office and opened the floor safe to get out enough money to be used in the dining room and the bar for the day.

Miss Baker testified that she was sitting in a chair with her back to the office door which was locked. She heard the doorknob to the locked office door rattling. She stated that someone began shaking and kicking the door; that she jumped up from the chair and about this time a shot was fired through the door and it went through the back of the chair that she had vacated a second before and lodged in the seat of the chair. That she opened the office door and two black males came charging in and one had a pistol pointed in her face and said, "Give me all the money you have." The man without the pistol backed into the office in a squatting position and reached his hands in the safe and started getting the money out and Miss Baker testified that she recognized this man as appellant. She stated that appellant had previously worked for the restaurant as a busboy but had not worked there for several months.

The witness further testified that both men had on toboggans and the man with the pistol had his face completely covered with a nylon stocking mask with holes cut out in the eye area. She stated that appellant had on a nylon stocking mask, with eye holes but it only covered his face from the nose up. That both men had on bluejeans and appellant wore white looking tennis shoes. That appellant's entire mouth area was exposed and she recognized him immediately as he had a very unusual mouth with big lips. She said appellant turned his face to her when he was getting the money from the same and she got a good look at his mouth area. They asked for a box to put the money in and she supplied them with a box. That as the robbers started to leave appellant looked her directly in the face and demanded the keys to the car she drove to the restaurant in, and she got another good look at him. That appellant reached over and took her car keys out of her hand, and they ran out of the restaurant. She stated that when appellant worked there, he had been in the office with her many times and that when he backed in the office, he put his hand on the floor safe and started taking the money out.

Miss Baker further testified the robbery was completed in about three minutes and the amount of money they took was $5,000.-

00, and that they took her Impala, four-door Chevrolet, which she had only a week and which was worth about $5,000.00. Her automobile was later found and returned to her.

On cross-examination Miss Baker repeated her description of the way the robbers were dressed. She stated she could and did recognize Donald Mitchell from the area of his face that was not covered since she had seen him many times. She made a positive in-court identification of appellant as one of the robbers. Though Miss Baker was subjected to a vigorous cross-examination, her identification of appellant as one of the robbers was not shaken in the least.

She stated that after the robbery she locked the office door and called the Police Department and reported the robbery. She then went to check on her car and it was gone.

Miss Cindy Johnson testified that she was a waitress at Ireland's Restaurant on December 11, 1974. She stated that she arrived at 6:55 A.M. and went to the kitchen and had returned to the game room when she saw a black man standing at the office door. That she observed him kicking the office door and then saw a gun in his hand. She turned and ran to the kitchen and as she was running, she heard a shot. She remained in the kitchen with the cook until Miss Baker came back to let them know she was all right. She said she only saw one man and he had a gun, but she did not get close enough to recognize him.

Mr. Roy Olney was employed by the Homewood Police Department on December 11, 1974. He testified that he received a call to investigate a robbery at Ireland's Restaurant and that during the investigation he found what he thought was a .22 caliber bullet lodged in a chair in the office of the restaurant. He removed the bullet and kept it in his possession until it was placed in possession of Sergeant James A. Barker. It was introduced in evidence but not as a .22 caliber bullet because Olney could not say positively that it was a .22 caliber bullet.

On cross-examination this witness stated that he could not say positively when the bullet was fired into the chair.

Sergeant James A. Barker testified that he was employed by the Homewood Police Department and that on December 11, 1974, he went to Ireland's Restaurant following a robbery call. He stated he talked to Miss Baker and received a bullet from Officer Olney which he sealed in an evidence envelope and placed in the evidence file. This bullet was offered and admitted in evidence with the Court instructing the jury there was only an opinion as to its caliber.

Sergeant Barker further testified that he had occasion to later see an automobile at the City Hall in Homewood which was identified as belonging to Miss Baker and the car was later returned to her. He stated that in the car, in plain view, he found a stocking hose, two nickels, and a lady's ring. He placed these items in an evidence envelope and put it in the evidence safe where the items remained until he brought the envelope to Court during appellant's trial. During trial the envelope was opened and he identified the items which he had put in the envelope. The stocking, nickels and ring were offered and admitted in evidence.

Mr. James A. Atkinson was employed by the Homewood Police Department on December 11, 1974. He testified that on December 12, 1974, he had occasion to see a car identified as belonging to Miss Baker. He processed the car for fingerprints and did not find any, but that the three items testified to by Sergeant Barker were in the car.

The State rested at this point and the defense moved for a directed verdict on the grounds that there was a fatal variance between the allegations in the indictment and

the proof, and no evidence was presented linking the defendant to the crime. Specifically, the defense contended the variance was predicated on the fact that the indictment alleged the money was the property of Miss Baker while the proof showed the money was the property of the restaurant and further the indictment charged that Miss Baker was robbed of her automobile while the proof showed she was only robbed of the key to her automobile. The motion was overruled.

Appellant did not testify but offered alibi testimony. Hazel Jones testified that she was the common law wife of the defendant and that she had lived with him for 13 months and was living with him on December 11, 1974. She stated that she was in his presence on the morning of December 11, 1974, when a cousin picked him up at the house at either 8:45 or 9:00 A.M. and that he was dressed in his work clothes. She said that when he returned from work she could tell he had been working by the tar on his clothes. She further stated that appellant had a scar on his lip and nose and he had these scars as long as she had known him.

On cross-examination she testified that when she first met appellant, he was working at Ireland's Restaurant and that they lived at her house. She denied that appellant was away from the house on the night of December 10, 1974, and that she didn't know where he was at 7:00 A.M. on December 11, 1974.

On rebuttal the State called Helen Marie Baker. She was shown the ring found in her car by Sergeant Barker and asked if she recognized it. She stated that it was a ring lost by a customer at Ireland's Restaurant which had been put in the cash register in the event someone returned to claim it. She further stated the ring was in the register the morning of the robbery.

On cross-examination she was shown the stocking mask found in her car and stated it was similar to the ones worn by the robbers but could not say that it was definitely the mask worn by one of the robbers.

■ To sustain a charge of robbery it is not essential that the stolen property be in actual physical contact with the person of the victim. It is sufficient if the property is taken from his presence or personal protection. *Bray v. State,* 47 Ala. App. 308, 253 So.2d 531; *DeFranze v. State,* 46 Ala.App. 283, 241 So.2d 125.

In *Bray v. State,* supra, the Court said:

"The testimony of the victim, if believed to the required degree, is sufficient to sustain a conviction of robbery. To sustain such a charge it is not necessary that the stolen property be in actual physical contact with the person of the victim, but it is sufficient if the property is taken from his presence or personal protection. *Cobern v. State,* 273 Ala. 547, 142 So.2d 869. Further, in an indictment for robbery, ownership of stolen property is properly laid in the party in possession, either as owner conditional, or bailee, or agent. *Howell v. State,* 26 Ala.App. 612, 164 So. 764."

In *Cobern v. State,* 273 Ala. 547, 142 So. 2d 869, the Supreme Court held:

"Nor, on a charge of robbery, must the stolen property be in the manucaption or on the person of the victim. It is sufficient if the property was taken from the victim's presence or personal protection. *Hill v. State,* 145 Ala. 58, 40 So. 654. Other states have held similarly:

" 'Where the property was in the control, custody, and protection of the person from whom it is alleged to have been taken, it is not necessary to sustain a conviction of robbery, that it should have been in actual physical contact with his person. *Jenkins v. State* (1917) 131 Ark. 312, 198 S.W. 877; *Wood v. State* (1929), 98 Fla. 703, 124 So. 44; *O'Donnell*

v. *People* (1906) 224 Ill. 218, 79 N.E. 639, 8 Ann.Cas. 123; *People v. Stathas* (1934) 356 Ill. 313, 190 N.E. 661; *State v. Calhoun* (1887) 72 Iowa, 432, 34 N.W. 194, 2 Am.St.Rep. 252; *Briggs v. State* (1928) 108 Tex.Cr.R. 544, 2 S.W.2d 238; *Ibeck v. State* (1929) 112 Tex.Cr.R. 288, 16 S.W.2d 232.'" 123 A.L.R. 1100.

"In line, therefore, with these well reasoned authorities we entertain the view that the car stolen from Mamie Belle's yard was taken from her presence within the meaning of that phrase as defined in the authorities."

■ The evidence clearly shows that after taking the $5,000.00, appellant took Miss Baker's automobile key out of her hand and in a matter of minutes her car was missing from the place where she parked it at the restaurant. The short time intervening from the time of the robbery, including the car keys, formed a continuous chain of events. This was one continuous transaction or one continuous occurrence, and everything that was done was admissible as of the res gestae. *Lambert v. State*, 48 Ala.App. 600, 266 So.2d 812; *Jackson v. State*, 229 Ala. 48, 155 So. 581.

We hold there was no variance between the allegations of the indictment and the proof offered in support therof.

Appellant claims that the trial judge committed reversible error in propounding questions to certain witnesses during the trial of this case.

■ It was not only within the power of the Court to propound questions to witnesses, but if justice required, or if it appeared necessary, it was the duty of the Court to do so, and such action upon the part of the Court cannot be construed as an aid to the prosecution or as being prejudicial to the substantial rights of the defendant. *Brown v. State*, 33 Ala.App. 97, 31 So.2d 670; *Patrick v. State*, 43 Ala.App. 338, 190 So.2d 551; *Register v. State*, 19 Ala.App. 11, 94 So. 778.

■ The trial court's statement during the rebuttal testimony of the victim of the robbery, "Let me say this: This is repetitious. This witness has been over it two, or three times. In fact she has identified this man, the lips and all the rest of it. I am going to sustain the objection as being repetitious," did not reflect partiality against the accused but was directed toward eliminating unnecessary repetition on rebuttal. *Burke v. State*, 44 Ala.App. 379, 209 So.2d 859.

There were several other instances in which the Court asked witnesses questions in order to clear up the issues and expedite the trial of the case. This action on the part of the Court finds support in numerous cases rendered by this Court and the Supreme Court. For a collection of these cases see *Butler v. State*, 55 Ala.App. 421, 316 So.2d 348.

■ Liberal rules are allowed counsel in drawing inferences from the evidence in their arguments to the jury whether they are truly drawn or not. *Alexander v. State*, 37 Ala.App. 533, 71 So.2d 520; *Cazalas v. State*, 43 Ala.App. 6, 178 So.2d 562; *Beaird v. State*, 219 Ala. 46, 121 So. 38.

■ Several statements made by the prosecuting attorney were sustained but there was no request that these statements be excluded from the jury's consideration. Such a motion is proper for review by this Court. *Hipp v. State*, 47 Ala.App. 580, 258 So.2d 920.

■ Appellant complains that the trial court was in error in charging the jury as to the law on reasonable doubt of the defendant's guilt, but no exceptions were reserved thereto. It is settled law that the correctness of the trial court's oral charge cannot be raised for the first time on appeal. *Segers v. State*, 283 Ala. 682, 220 So.2d 848; *Cox v. State*, 280 Ala. 318, 193 So.2d 759; *Cronnon v. State*, 46 Ala.App.

632, 247 So.2d 387; *Eady v. State,* 48 Ala. App. 726, 267 So.2d 516.

We have carefully searched the record for errors affecting the substantial rights of appellant and have found none.

The judgement of conviction is affirmed.

AFFIRMED.

All the Judges concur.