509 So.2d 1071 (1986)
Darryl Travis WATKINS
v.
STATE.
6 Div. 925.
Court of Criminal Appeals of Alabama.
October 14, 1986.
Rehearing Denied November 12, 1986.

*1072 AFTER REMANDMENT
TAYLOR, Judge.
In this case Darryl Travis Watkins was convicted of capital murder and sentenced to death. He appealed to this court, which affirmed his conviction and sentence. Watkins v. State, 450 So.2d 154 (Ala.Cr.App. 1983). The Supreme Court of Alabama granted certiorari, reversed the judgment of this court, and remanded the cause for the trial court to determine whether petitioner's rights were "substantially affected" by the state's belated disclosure of allegedly exculpatory evidence. Ex parte Watkins, 450 So.2d 163 (Ala.1984). The trial court concluded that the petitioner's rights had not been "substantially affected." This court affirmed the trial court's determination in Watkins v. State, 509 So.2d 1067 (Ala.Cr.App.1985).
Upon his petition for certiorari, to the Supreme Court from that ruling, the appellant raised for the first time a new assignment of error. He there contended that the trial court erred in striking from the venire a juror on the grounds of his disbelief in the death penalty. The appellant contends that the juror merely expressed a disapproval of the death penalty. The Alabama Supreme Court, noting that this ground was raised in brief only, and for the first time on petition for writ of certiorari, and noting that this court had not had an opportunity to consider or examine that claim, granted certiorari, but only for the purpose of remanding the cause to this court as above indicated. Ex parte Watkins, 509 So.2d 1071 (Ala.Cr.App.1986).
The issue is whether the trial court erred in removing a member of the venire for cause because of his inability to vote for the death penalty under any facts or circumstances.
In the course of the voir dire examination, five veniremen indicated that they were opposed to the death penalty. All of these veniremen were questioned specifically about the nature and degree of their opposition to the death penalty and to what extent it would affect their decision as jurors. The questioning was done one at a time in chambers. As a result, the assistant district attorney did not challenge two of the five prospective jurors. The assistant district attorney challenged two others unsuccessfully. Only the juror here in question, one Mr. Franklin, was removed from the venire as a result of the challenge for cause. This is a fact question. Here is the examination:
"VOIR DIRE EXAMINATION"
"BY MR. NAIL
"Q: Mr. Franklin, do you have a general objection to the death penalty?
"A: No.
"Q: Just in general, or opposed to the use of the death penalty?
"A: No. I just don't believe I could bring it in if somebody asked me to.
"Q: Okay. Let me ask you this. The death penalty is involved in this case, and the Judge would instruct you as to the law in this case and how the death penalty should or should not be applied. If after you had heard all of the evidence in the case, if selected as a *1073 juror, and you are convinced beyond a reasonable doubt and to a moral certainty that the defendant is guilty of the capital offense contained in the indictment, and the criteria that the Court sets out, how the death penalty should be applied, you are convinced beyond a reasonable doubt that these facts and these circumstances fit those criteria, could you as a juror come back and return a verdict and sentence this man to death? Or do you know right now, regardless of what the facts and evidence may show, that you could not do that?
"A: I don't believe I could.
"MR. NAIL: We would move to
"THE COURT: Well, let's let Mr. Wilkinson ask his questions.
BY MR. WILKINSON:
"Q: I understand, Mr. Franklin, I think what you are saying. It would be very, very hard for you to sentence anybody to death or return a verdict; right?
"A: Uh-huh.
"Q: Now, if the facts, however, in your mind, if you thought the facts were bad enough to warrant bringing back the death penalty, could you do it, if you thought it was bad enough, personally?
"A: No, I don't believe I could.
"Q: Are you sure?
"A: Uh-huh.
"THE COURT: Challenge?
"MR. NAIL: We challenge.
"THE COURT: Sustained. All right. Gentlemen, would you like to have Mr. Franklin keep his same seat so we will keep the people in proper perspective?
"MR. WILKINSON: That is fine.
"MR. GOMANY: Yes, that is fine."
The central answer is "No, I don't believe I could." There are a number of recent United States Supreme Court cases on this point which are controlling authority. The original constitutional yardstick was described in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). There the Court required that the juror make it unmistakably clear that he would automatically vote against capital punishment and that his feelings would prevent him from making an impartial decision as to guilt. This is no longer the test. Adams v. Texas, 443 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), ruled that only those jurors whose views on capital punishment would prevent or substantially impair the performance of their duties could be challenged for cause. Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), held that the test for excluding a venireman is whether the juror's views would prevent or substantially impair the performance of his duties in accordance with his instructions and oath. The Court expressly stated that the juror's bias did not have to be proved with unmistakable clarity. Darden v. Wainwright, 477 U.S. 187, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), stated in part as follows:
"The precise wording of the question asked of [the venireman], and the answer he gave, do not by themselves compel the conclusion that he could not under any circumstances recommend the death penalty. But Witt recognized that `determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism.' [469] U.S., at [424] [105 S.Ct., at 852]. The trial court, `aided as it undoubtedly was by its assessment of [the venireman]'s demeanor,' at [434] [105 S.Ct., at 857] was under the obligation to determine whether [the venireman]'s views `would prevent or substantially impair the performance of his duties as a juror,' id., at [433] [105 S.Ct. at 857].... No specific objection was made to the excusal of [the venireman] by defense counsel. Nor did the court perceive, as it had previously, any need to question further. Viewing the record of voir dire in its entirety, we agree with the reasoning of the Court of Appeals that the trial court's decision to exclude this juror was proper. [Darden v. Wainwright] 767 F.2d, [752] at 754."
The Eleventh Circuit Court of Appeals held in 1983 in McCorquodale v. Balkcom, 721 F.2d 1493 (11th Cir.1983), cert. denied, *1074 466 U.S. 954, 104 S.Ct. 2161, 80 L.Ed.2d 546 (1984), that a prospective juror who responded to the death penalty questions, "I don't think I could do it. I really don't," has made it sufficiently clear that she could not impose the death penalty regardless of the evidence presented. The Eleventh Circuit stated:
"Her statements, coupled with the trial judge's ability to observe [her] tone of voice and demeanor for indecisiveness, allow only one reasonable interpretation of [her] repetitive statement, `I don't think I could do it. I really don't': she unequivocally believed that she could not impose the death penalty regardless of the evidence presented." 721 F.2d at 1500-01.
The Fifth Circuit in Martin v. Maggio, 711 F.2d 1273 (5th Cir.1983), even held that the following equivocal responses would establish the necessary predicate for disqualification: "I don't know if I would vote for the death penalty." and "I don't know if I could do it." These are all euphemistic expressions of "no."
We find that the venireman's responses in this case were sufficiently positive to justify and require his disqualification as a juror. In addition to the words, the trial judge had the opportunity, which we do not have, to observe the equally important manner of speech, demeanor, body language, tone, and appearance of the venireman. It is sufficiently clear that no error was committed by the trial judge in this respect, and his ruling granting the challenge for cause of this juror is due to be affirmed.
AFFIRMED.
All the Judges concur.